**AFFIRM; and Opinion Filed February 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01409-CV

### LEATHA A. MUNAI, Appellant
### V.
### WILLIAM K. MUNAI, Appellee

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF 04-04859**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Schenck[1]
Opinion by Justice Schenck

Appellant Leatha A. Munai appeals the trial court's division of property in her divorce

from appellee William K. Munai. We conclude the trial court did not abuse its discretion and

affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this

memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Leatha and William were married in August, 1995. There are no children of the

marriage. Leatha and William lived together for less than three years, but neither party sought a

divorce until 2004. Without notifying Leatha, William obtained a final decree of divorce in

2004. He purportedly married another woman, fathered a child, purchased real estate, and

---

[1] The Honorable Justice David J. Schenck succeeded Justice Michael O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and record before the Court.

incurred a $49,000 debt to the Internal Revenue Service. Some years later, Leatha learned of the decree, and sought and obtained a bill of review. The trial court vacated the decree in 2010, and Leatha filed her counterpetition for divorce, requesting a disproportionate share of the marital estate because of William's fraud and other fault. After a bench trial at which both parties testified, the trial court rendered a decree of divorce on August 20, 2012. William was ordered to pay Leatha $1,000. Otherwise, the parties were awarded the property in their possession and the associated debt. Leatha appeals, alleging that the trial court's judgment awards a grossly disproportionate share of the community estate to William. In her single issue on appeal, she specifically challenges the trial court's consideration of the $49,000 tax debt in valuing the property awarded to William.

### STANDARD OF REVIEW

We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex. App.—Dallas 2003, no pet.).

In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

Because neither party requested findings of fact and conclusions of law, and none were made, we imply all the necessary findings to support the trial court's judgment. *LaFrensen*, 106 S.W.3d at 877. When, as here, a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). We must affirm the trial court's judgment on any legal theory that finds support in the evidence. *LaFrensen*, 106 S.W.3d at 877 (citing *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986)).

## DISCUSSION

The trial court has wide latitude to divide the marital estate in a manner that the court deems just and right. *See* TEX. FAM. CODE ANN. § 7.001 (West 2006); *LaFrensen*, 106 S.W.3d at 878. In exercising its discretion, the court need not divide community property equally. *See Murff*, 615 S.W.2d at 698–99. A trial court may consider many factors including each party's earning capacity, abilities, education, business opportunities, physical condition, financial condition, age, and size of separate estates, as well as any future needs for support. *See id.*

In the divorce decree, William was awarded (1) his 401(k) plan with an approximate value of $15,000; (2) a vacant lot in Oak Cliff, valued at $8,000 by the Dallas County Appraisal District; (3) his home in Dallas, valued at $126,000 by the Dallas County Appraisal District, as well as the balance due on the related note and deed of trust of $124,000, and all taxes and insurance related to the home; (4) a 2003 Toyota Tacoma, valued at $7,000 or $8,000; (5) a 2003 BMW, for which there was no evidence in the record as to value; (6) "the balance due the Internal Revenue Service in back taxes" in the approximate amount of $49,000; and (7) any debts related to property awarded to him or incurred in his name. He was also ordered to pay Leatha the sum of $1,000.

Leatha was awarded the $1,000 from William and a 1997 Cavalier motor vehicle she describes as a "clunker" that was not valued in the record. She was awarded all property and personal effects in her possession, as well as any funds in any retirement or similar plan, and any debts she had incurred in her own name or on property awarded to her, although no specific property or debt is described in the decree.

Leatha testified that she last worked in 2006. Since then, she has been a full-time student at Eastfield and Mountain View Colleges. She receives $864 per month in Social Security disability benefits. She testified that William forged her signature on the documents required to obtain the 2004 divorce, and that she did not learn of the divorce until 2009. She testified that during the marriage she contributed to William's education in nursing school.

William is employed full time by WKM Healthcare, Inc. His take-home pay is approximately $1,024 every two weeks. William testified that when he and Leatha lived together, he was working at minimum wage of $4.00 per hour. They separated more than fifteen years before trial. William testified that the IRS debt was incurred approximately five years prior to trial, when rental property that he owned was foreclosed upon. He testified that he is paying the debt on a monthly basis through an amount withheld from his salary. He also testified that he is the father of a child born in 2004, and that he pays $250 per month in child support.

Leatha argues that all property divided by the court was community property, because William did not plead or prove that any property was his separate property. She argues that using the values proven at trial, William received approximately $22,000 to $32,000 (including his 401(k) plan, the Oak Cliff lot, the 2003 Toyota, and the equity in his home), while she received only $1,000. She calculates that William was awarded at least 95% of the community estate, while she received less than 5%.

Leatha's calculations do not include the $49,000 debt to the IRS, because she contends it should not have been considered in the division of the marital estate. She argues that William purchased the properties on which the debt was incurred after he abandoned her, fraudulently divorced her, purported to marry another woman, and had a child. She argues William "obviously planned and intended for the rents, profits, and appreciation he hoped to receive by purchasing the rent properties to accrue solely to him and/or his new child and putative wife" rather than to Leatha, "since he had already obtained a fraudulent division of the marital estate" in the "fraudulent 2004 divorce decree." She contends that William allowed the loans on the property to go into default and now uses the resulting IRS debt to justify an award to himself of more than 95% of the net assets of the community. She concludes that this result is neither equitable nor just and right under section 7.001 of the family code.

Leatha also contends that all of the factors to be considered by the trial court in making an equitable division of the community estate weigh in her favor. First, she compares earning capacity. She argues that William has education and experience as a nurse or nurse's aide and has been steadily employed in the home health care business.[2] He did not testify to any health problems. In contrast, Leatha lives on Social Security disability benefits. There was no evidence at trial, however, as to the nature of her disability, its severity, or its duration. Leatha argues that she "is still struggling to gain an education," while William has received the education he needs for success in his employment.

Next, she compares their relative financial conditions. She lives on a disability benefit of $864 per month, while William earns $1,024 bi-weekly, net of debt payments to the IRS. She points out that there was no evidence of the amount of William's payments to the IRS. She

---

[2] Leatha also contends that William has an ownership interest in the business because his initials are in the business's name. William denied any such interest at trial, however, and Leatha offered no evidence to support her contention.

argues that William has a 401(k) investment, as well as real estate and two vehicles on which there is no debt. She argues that she is "trying to pay off student loans she is incurring," and that she is struggling to keep her only vehicle running.

Leatha also emphasizes William's fraud in obtaining the 2004 divorce, his wasting of community assets, and his marriage to another woman and fathering of a child while he was still married to Leatha. A trial court may consider the "fault" of either of the parties for the breakup of the marriage, if pleaded. *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993) (citing *Murff*, 615 S.W.2d at 699). But fault and disparity in the parties' incomes are only two of the many factors the trial court should consider when dividing a marital estate. *See Murff,* 615 S.W.2d at 699. And William points out that the divorce decree was granted on grounds of insupportability, not fault. *See* TEX. FAM. CODE ANN. § 6.001 (West 2006) (divorce may be granted "without regard to fault" if marriage has become insupportable).

Leatha relies on *O'Carolan v. Hopper*, 71 S.W.3d 529, 534–35 (Tex. App.—Austin 2002, no pet.), in which the trial court's judgment awarding all of the community property to the husband was reversed. In that case, the wife "suffered from a severe brain malformation," and the husband had "significantly greater income, earning capacity, and business opportunities." *Id.* at 532–33. The trial court awarded only spousal support to the wife, which left her "vulnerable to a reduction in the total amount of money received in a way that a fixed division of the community property would not." *Id.* at 534. Under those circumstances, the appellate court concluded the property division was "manifestly unfair" and remanded for a new property division. *Id.* at 534–35.

William replies that when the IRS debt is taken into account, the trial court "essentially split the net community estate in half." He contends that  tax liabilities should be considered in determining a just and right division, citing *Young v. Young*, 168 S.W.3d 276, 286 (Tex. App.—

Dallas 2005, no pet.). In *Young*, we concluded the trial court did not err by placing responsibility for the parties' income tax liability on the husband in light of evidence regarding his control of certain community assets. *See id.* at 286. William also argues that the trial court was the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.* at 281.

Both parties also cite our opinion in *Cole v. Cole*, 532 S.W.2d 102 (Tex. Civ. App.—Dallas 1975, no writ). In *Cole*, we explained, "[i]t is true that a tax is technically not a debt and that the court has no power to relieve either party of personal liability to the taxing authority." *Id.* at 104–105. Leatha relies on this statement to argue that tax liability is not a "debt" which must be taken into account in dividing a community estate. William, however, cites our ultimate conclusion in *Cole* that the trial court "should have considered the probable tax liability" in order to make a just and right division of the community estate. *Id.* at 105.

The record reflects that Leatha lacks the resources to discharge the tax liability, a factor the trial court properly considered. *See id.* Although Leatha argues that only William was a party to the loan transactions that resulted in the tax liability, she also seeks a share of other property he accumulated during the fifteen years the parties were separated, and makes no argument that any property in question was separate rather than community. Considering the record as a whole, the trial court did not abuse its discretion in concluding that the community estate had a negative value. Under those circumstances, it was within the trial court's discretion to conclude that William was in the best position to discharge the tax liability, and that the parties should be awarded the assets and debts in their possession during their long separation. We overrule Leatha's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID SCHENCK
JUSTICE

121409F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LEATHA A. MUNAI, Appellant

No. 05-12-01409-CV     V.

WILLIAM K. MUNAI, Appellee

On Appeal from the 330th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF 04-04859.
Opinion delivered by Justice Schenck; Justices Bridges and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee William K. Munai recover his costs of this appeal from appellant Leatha A. Munai.

Judgment entered this 20th day of February, 2015.